UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HUGH SMALL                                         CIVIL ACTION

VERSUS                                             NO. 05-216

E.I. DUPONT DE NEMOURS & CO.                       MAGISTRATE JUDGE
                                                   JOSEPH C. WILKINSON, JR.

## ORDER AND OPINION ON MOTION

Plaintiff, Hugh Small, sued his former employer, E.I. DuPont de Nemours & Co. ("DuPont"), alleging that his employment had been terminated because of race discrimination in violation of Title VII.  42 U.S.C. § 2000e et seq.  Complaint, Record Doc. No. 1.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties.  Record Doc. No. 10.

Defendant filed a motion for summary judgment, supported by deposition transcripts and other exhibits.  Record Doc. No. 35.  Plaintiff filed a timely opposition memorandum, also supported by deposition transcripts and plaintiff's affidavit.  Record Doc. No. 45.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.   EVIDENTIARY ISSUES

Plaintiff objected in his opposition memorandum that none of the documentary exhibits submitted by defendant were verified as required by Fed. R. Civ. P. 56(e) and the exhibits should be stricken or disregarded.  The court ordered DuPont to submit an affidavit verifying any exhibits that it wished the court to consider.  Record Doc. No. 48. DuPont submitted a supplemental memorandum in which it purported to verify each contested exhibit, either by deposition testimony already in the record or by an additional affidavit attached to its memorandum.  Record Doc. No. 49.  Small received leave to file a reply memorandum.  Record Doc. Nos. 53, 54.

Small does not now contest the authenticity of Defendant's Exh. F, "Hugh Small-- Presentation to DLT [DuPont's Leadership Team]" dated March 22, 2004, which is the key document that supports (along with the testimony of management witnesses) DuPont's proffered legitimate, nondiscriminatory reasons for terminating Small's employment.  The document memorializes the findings and conclusions of DuPont's investigation of Small's conduct, recommends that he be fired, states that all members of the DLT present at the final case termination meeting agreed with the recommendation

2

and reports that the plant manager was contacted by cell phone by two members of the DLT and also agreed with the recommendation.

Small argues in his opposition and his reply memoranda that the DLT presentation is a compilation of hearsay statements gathered by the investigators and is therefore unreliable and inadmissible. However, the document plainly falls under the business records exception of Fed. R. Evid. 803(6), which provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

This rule was specifically designed to "relax[] the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved," which was "a burdensome and crippling aspect of using records of this type." Fed. R. Evid. 803(6) Advisory Comm. Notes (1972) (quoted in Federal Civil Judicial Procedure and Rules 459 (West 2006)). The presumed reliability of information contained in ordinary business records overcomes the hearsay objection because the rule assumes that

3

"[a]ll participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, 'in the regular course of business.'"  Id. at 459-60.

Obviously, decisionmakers in a large company must rely on the information gathered and recommendations offered by employees designated to accomplish certain tasks.  Such information is an exception to the hearsay rule.  See La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481 n.7 (5th Cir. 2002) (notes of vice president who investigated plaintiff's allegations of sexual harassment by supervisor, which included notes of statements by other employees who similarly alleged sexual harassment by same supervisor, were admissible under Fed. R. Civ. P. 803(6)); Gardner v. Chevron U.S.A., Inc., 675 F.2d 658, 660 (5th Cir. 1982) (affirming admission into evidence of oil well foreman's reports that "contained factual observations which he made and those which were reported to him by Chevron employees.  In addition, they contain his opinions concerning the possible causes of the fire.").

According to DuPont's competent summary judgment evidence, the DLT presentation contained precisely such information.  Although Small disputes the findings and conclusions of DuPont's investigators and managers, he has offered nothing to indicate that "the source of information or the method or circumstances of preparation

indicate lack of trustworthiness" in the case of the DLT presentation.  Fed. R. Evid. 803(6).  Accordingly, his hearsay objection to Defendant's Exh. F is overruled.

Small argues that Defendant's Exhibits C, D, G, H, I and J are not properly authenticated because the affiant, Milton Hill, does not demonstrate that he is competent to testify concerning DuPont's method of record keeping.  To the contrary, Hill states that he has personal knowledge of each of the documents and personal knowledge that each was prepared and maintained as a regular part of DuPont's ongoing business operations. Record Doc. No. 49, affidavit of Milton Hill, at ¶¶ 3, 4.  Plaintiff offers nothing but speculation that Hill's sworn statements in this regard are not true.  This objection is overruled.  New Orleans Cold Storage & Whse. Co. v. National Labor Relations Bd., 201 F.3d 592, 601 n.9 (5th Cir. 2000).

Finally, Small contends that Defendant's Exhibits C, D, G, H, I and J are both hearsay and irrelevant.  Again, these are business records and are admissible  pursuant to Fed. R. Civ. P. 803(6).  The exhibits are relevant as defined by Fed. R. Civ. P. 401. Accordingly, these objections are also overruled.

II.    THE UNDISPUTED MATERIAL FACTS

The following material facts are accepted as undisputed solely for purposes of defendant's motion for summary judgment.

Small, who is African-American, began working at DuPont's facility in LaPlace, Louisiana in March 2001.  His job duties as an operator required him to work around various chemicals, including 4-ADP, a known carcinogen.  DuPont imposes strict safety requirements, of which Small was aware, on all employees who work around this chemical.  One requirement is that all employees must provide scheduled urine samples to monitor their exposure to 4-ADP.

Small gave a routine urine sample on March 15, 2004 that tested positive for 4-ADP two days later.  DuPont then began investigating how plaintiff had been exposed to the chemical (known as a "process contact"), which is standard procedure whenever an employee has a positive urine test.  Milton Hill, plaintiff's first line supervisor, and Ian Tudman, the plant's industrial hygienist, performed the investigation and reported their findings to Steve Irwin, the plant's operations area superintendent.

Hill became suspicious that Small might have been trying to cover up a process contact when Hill learned of both the positive urine test and that Small had brought his clothing to the Protective Equipment Center ("PEC") to be washed on March 15th, an action that did not comply with the safety procedures for a suspected process contact.  Thus, Hill began investigating both the cause of the positive test and whether Small had tried to cover up a safety incident.  Defendant's Exh. E, deposition of Steve Irwin at pp.

6

17-18; Defendant's Exh. F, DLT Presentation; Plaintiff's Exh. 3, deposition of Milton Hill at pp. 23-25.

Hill, Tudman and/or Floyd Ordeneaux, the human resources manager, interviewed Small; Don Woods and Chandrika Johnson, who worked in the PEC; and Donald Brack, who had worked in the same area as Small on March 15th.  Defendant's Exh. E, Irwin deposition at pp. 13-15; Plaintiff's Exh. 3, Hill deposition at pp. 23-26, 32, 34, 35.

The investigation revealed discrepancies between the time when plaintiff said that he had delivered his clothes to the PEC for washing on March 15th and the time that Woods and Johnson reported receiving the coveralls.  The discrepancies in the times raised suspicions among his supervisors that Small was not being truthful.  Defendant's Exh. E, Irwin deposition at pp. 46-47.

Small initially told the investigators that he took his coveralls to the PEC around 3:00 p.m., after being splashed with water about 2:30 p.m.  During the investigation, he revised his estimate of the clothing drop-off time to around 2:00 p.m. because he had learned that Brack had said that plaintiff left their work area right after Brack had collected a sample at 1:44 p.m.  Brack told the investigators that he did not see the splash on Small's coveralls, but that Small left their work area around 2:30 p.m. to change his clothes.  Small continued to assert during followup interviews that he did not deliver his clothes to the PEC before his lunch break, which he took around noon, and that he

7

thought he had only been splashed with water. Defendant's Exh. B, deposition of Hugh Small at pp. 103-04; Defendant's Exh. F; Plaintiff's Exh. 5, deposition of Donald Brack at pp. 16, 30; Plaintiff's Exh. 11, affidavit of Hugh Small at ¶¶ 13, 14, 16-19, 21.[1]

Based on their investigation, Hill and Irwin concluded that Small had delivered his wet coveralls for washing because he knew that he had experienced a potential process contact. He admittedly did not engage in the safety procedures mandated after a process contact.

The investigators concluded that plaintiff's coveralls had been dropped off at the PEC at approximately noon on March 15th and had been washed around 12:30 p.m. that day, based on what Woods and Johnson had told them. Woods stated that he had been in the PEC when Small delivered the clothing at or just before 12:00 noon. Johnson said that she had washed Small's coveralls, which were already in the PEC, at 12:30 p.m. after she returned from lunch. Defendant's Exh. F, DLT presentation; Plaintiff's Exh. 3, Hill

---

[1] DuPont has submitted selected excerpts from plaintiff's deposition taken on February 10 and May 16, 2006. Small has submitted his own affidavit dated August 22, 2006, but no excerpts from his deposition. To the extent that plaintiff's affidavit does not conflict with his deposition testimony and contains facts, as opposed to conclusory allegations and speculation, it is competent summary judgment evidence. Fed. R. Civ. P. 56(e). However, a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984); ; accord Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 482 (5th Cir. 2002); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 136 n.23 (5th Cir. 1992); cf. S.W.S. Erectors, Inc., 72 F.3d at 496 ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment. . . .").

deposition at pp. 34-35, 47.  Irwin testified that he had no reason to question the credibility of the information that Hill and Tudman presented to him.  Defendant's Exh. E, Irwin deposition at p.59.

Consistently with what he had told the investigators on March 17, 2004, Woods testified that Small had delivered his coveralls to the PEC about 10 minutes before noon on March 15th and asked Woods to wash them.  Woods stated that he put the clothes in the washing machine, but did not start the machine, and went to lunch about noon.  He said that Johnson washed the clothes later that day.  He said he left for the day about 2:00 p.m.  He testified that he saw purple stains on the coveralls when Johnson was folding the clothes either the same day or the next day.  Defendant's Exh. L, Woods deposition at pp. 20-22; Plaintiff's Exh. 6, Woods deposition at pp. 23-28, 37-38.

The large purple stains on the coveralls indicated that a process contact had occurred.  Defendant's Exh. E, Irwin deposition at p.23; Defendant's Exh. L, Woods deposition at p.33;  Defendant's Exh. M, Johnson deposition at p.20.

Consistently with the information that she had given to the investigators, Johnson testified that she washed some coveralls that were already in the washing machine when she returned from lunch on March 15th.  She testified that she was sure it was after lunch and before her 2:00 p.m. break because she recalled that Woods had left at 2:00 p.m. that day.  She stated that she saw large purple stains on the legs when she took the coveralls

out of the dryer later that day.  She said she showed the stains to Woods and then folded the coveralls and put them in plaintiff's locker.  Johnson testified that Mickey Oncale, a DuPont supervisor, came in the next day and told them that Small had "a high reading" and that Woods then told Oncale they still had Small's coveralls.  She said she retrieved the coveralls from the locker and gave them to Oncale.

Johnson testified that sometime later, after the timing of the coveralls delivery became "a big deal," she tried to tell Irwin that she was not entirely sure about the time of day that she had washed them.  However, she was unable to talk to him because her car caught on fire that day.  Plaintiff's Exh. 7, Johnson deposition at pp. 16-21, 25, 41.

Based on the information gathered by Hill, Ordeneaux and Tudman, Irwin and Hill created a presentation for DuPont's Leadership Team ("DLT"), which serves as a review body for employee disciplinary actions.  The DLT consisted of the plant manager, his direct staff and plaintiff's first line supervisor, Hill.

The presentation summarized the facts learned during the investigation; presented the investigators' conclusions that Small had committed major misconduct, based on findings of his failure to report a suspected process contact, his safety violations following the contact and his dishonesty; and recommended that his employment be terminated.  All 15 people who attended the final termination case meeting on March 22, 2004 concurred in the recommendation.   The plant manager concurred in the

10

recommendation and made the final decision to terminate.  Defendant's Exh. F, DLT presentation; Defendant's Exh. E, Irwin deposition at pp. 48, 56.

DuPont did not terminate Small solely because of his involvement in a process contact, which alone would not be a disciplinary offense.  However, the investigators and the DLT concluded that Small had been dishonest during the investigation concerning his exposure and his safety violations following the exposure.  They concluded that plaintiff had violated DuPont's safety procedures by failing to notify a supervisor of a suspected process contact, failing to shower in the field, failing to shower in the changing room, failing to bag and tag contaminated clothing, and asking the PEC to wash his contaminated clothing, which subjected employees there to potential exposures.

According to DuPont, Small's failures to follow required safety procedures following a process contact, combined with his dishonesty about the exposure and its aftermath, were the bases for the recommendation that Small's employment be terminated.  Defendant's Exh. F, DLT presentation; Defendant's Exh. E, Irwin deposition at pp. 50-52.

III.   ANALYSIS

   A.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden but "is not required to present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case."  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir. 1998) (citing Celotex, 477 U.S. at 323).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential

12

elements of its claim.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d

698, 712 (5th Cir. 1994) (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of

proof concerning an essential element of the nonmoving party's case renders all other

facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at

430.

The court must consider all evidence in the light most favorable to the nonmoving

party.  National Ass'n of Gov't Employees, 40 F.3d at 712-13.  "Conclusory allegations

unsupported by specific facts, however, will not prevent the award of summary

judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any

"significant probative evidence tending to support the complaint."'"  Id. at 713 (quoting

Anderson, 477 U.S. at 249).

"Factual controversies are construed in the light most favorable to the nonmovant,

but only if both parties have introduced evidence showing that an actual controversy

exists."  Edwards, 148 F.3d at 432.  "'We do not, however, in the absence of any proof,

assume that the nonmoving party could or would prove the necessary facts.'"  Badon v.

R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp.,

37 F.3d 1069, 1075 (5th Cir. 1994)) (emphasis in original).  "Conclusory allegations

unsupported by specific facts . . . will not prevent the award of summary judgment; 'the

plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant

13

probative evidence tending to support the complaint.'''"  National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  Little, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

B.    The Evidentiary Framework for Race Discrimination Claims

DuPont concedes, for purposes of the instant motion only, that Small can establish a prima facie case of race discrimination under Title VII.  Thus, it is undisputed that plaintiff (1) was a member of a protected class, (2) was qualified for the position, (3) was dismissed and (4) was replaced by an individual of a different race, or that his employer treated similarly situated individuals of a different race more favorably than it treated him.[2]  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997); Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1179 (5th Cir. 1990); Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987).

If a prima facie case is present, a presumption of discrimination arises and the

---

[2]As to the fourth prong, DuPont concedes only that Small was replaced by an individual of a different race, not that he was treated less favorably than similarly situated individuals of a different race.

burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for [plaintiff's] termination. This causes the presumption of discrimination to dissipate. The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status.

To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.

Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added) (citing Reeves

v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000)) (additional citations omitted).

The United States Supreme Court held in Reeves that a trier of fact may infer the

ultimate fact of discrimination from the falsity of the employer's explanation combined

with plaintiff's establishment of a prima facie case.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

15

Reeves, 530 U.S. at 147-48 (citations omitted).

    C.    DuPont Has Produced Legitimate Nondiscriminatory Reasons for Terminating Small's Employment

DuPont has carried its burden of production.  It has produced competent summary judgment evidence that it terminated Small's employment because he failed to report a suspected process contact, violated DuPont's safety regulations following the contact and was dishonest about the suspected contact and its aftermath.

DuPont's competent evidence shows that it, through its employees Hill, Tudman and Irwin, investigated Small's conduct following a suspected process contact.  Although Small denied knowing of any such contact at the time and stated that he believed he had only been splashed with water, his positive urine test and the purple stains on his coveralls confirmed that a process contact had actually occurred.  He admits that he did not follow the required safety procedures following the contact.

Two disinterested witnesses, Woods and Johnson, told the investigators that Small had delivered his coveralls to the PEC for washing around noon on March 15th and that the clothes had been washed about 12:30 p.m.  The testimony of Woods and Johnson supports that they conveyed this information to the investigators in March 2004.

Small denied (and continues to deny) that the clothing delivery occurred before lunch.  He initially told the investigators that it had occurred around 3:00 p.m., then

adjusted his story to say that it had been around 2:00 p.m., after he found out that Brack had stated that he had left the work area around that time.  The discrepancies in the times raised suspicions among his supervisors that Small was not being truthful.

The investigators concluded that plaintiff's coveralls had been dropped off at the PEC at approximately noon on March 15th and had been washed around 12:30 p.m. that day, based on what Woods and Johnson had told them.  Irwin had no reason to question the credibility of Woods and Johnson.

Hill and Irwin concluded that Small had changed his clothes and delivered the wet coveralls for washing because he knew that he had experienced a potential process contact, then failed to undertake the required safety precautions, which put both him and fellow employees at risk.  Finally, they concluded that he had lied about his knowledge. The combination of these circumstances led to their recommendation, which was unanimously approved by a 15-member DLT and ultimately by the plant manager, that Small should be fired.

The burden therefore shifts to plaintiff to produce competent summary judgment evidence sufficient to raise a genuine issue of material fact that DuPont intentionally discriminated against him because of his race.

D.    Small Has Failed to Rebut Defendant's Legitimate Reasons for Termination

Small fails to carry his burden of proof.  He has produced nothing but speculation, conclusory allegations and hearsay to support his contention that DuPont fired him based on his race, rather than for DuPont's legitimate, nondiscriminatory reasons.

Small argues that he told the truth to the investigators about his lack of knowledge of a suspected process contact and about the late afternoon time when he delivered the coveralls to the PEC on March 15, 2004.  He points to minor and inconsequential discrepancies in the testimony of Woods and Johnson in July 2006, more than two years after the incident, about the timing of their washing, drying and folding of his coveralls, their discovery of the purple stains and when they reported those stains to supervisors. Small also notes that Johnson testified that she later wanted to tell Irwin that she was not certain about the time when she washed the clothes. He argues that these discrepancies require a trial to determine the credibility of each witness.

However, the relevant question for summary judgment purposes is not whether Woods or Johnson questioned or contradicted the intricate details of the timing at a later date, but what information Hill, Irwin and the DLT had when they made the decision to terminate Small's employment.  Having spoken to plaintiff and the other witnesses within a couple of days of the incident, Hill and Irwin chose to believe Woods and Johnson. The testimony of Woods, Johnson, Hill and Irwin consistently reveals that Woods and

18

Johnson both told the investigators that Small had delivered his clothes for washing to Woods shortly before lunch on March 15th and that Johnson had washed them when she returned from lunch and found them in the washing machine. Johnson never told Irwin that she was unsure about the time when the coveralls were delivered.

Thus, the information known to Hill, Irwin and the DLT at the time was that Small had experienced a process contact on March 15th, which was confirmed by a positive urine test and the purple stains on his coveralls; he had delivered the coveralls to be washed before lunch on that date, which was confirmed by two credible, disinterested witnesses; he had initially stated that he had delivered the coveralls at 3:00 p.m. and then changed his story after being confronted with a different time from Brack; his changed story still did not conform with what Woods and Johnson had said; and he had failed to follow the required safety procedures despite an actual process contact. These facts led Hill, Irwin and the DLT to conclude that plaintiff had lied about what happened.

It is irrelevant whether defendant's decision may have been based on incorrect facts, so long as its decision was not motivated by discriminatory animus. Scales v. Slater, 181 F.3d 703, 711 (5th Cir. 1999). "The fact that the employers' [sic] reasonable belief [in its reason for taking an adverse employment action] eventually proves to be incorrect . . . would not change the conclusion that the [action] had been non-discriminatory." Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir. 1993).

19

"[A]nti-discrimination laws are not vehicles for judicial second-guessing of business decisions." Mato v. Baldauf, 267 F.3d 444, 453 (5th Cir. 2001) (quotation omitted). "Even if evidence suggests that a decision was wrong, we will not substitute our judgment . . . for the employer's business judgment." Scott v. University of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

In this case, no competent summary judgment evidence suggests, much less establishes a genuine material fact dispute, that DuPont's decision was based on discriminatory animus, rather than on the facts it had at the time and its legitimate reasons for terminating Small's employment.  Plaintiff's subjective belief that he was fired because of his race "is insufficient to create an inference of the defendants' discriminatory intent." Roberson v. Alltel Information Servs., 373 F.3d 647, 654 (5th Cir. 2004) (quotation omitted).  "This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

Small argues that several white employees were treated more favorably than he was in similar circumstances.  However, he fails to show that those employees were "similarly situated" in circumstances that were "nearly identical" to his own.  The Fifth

Circuit has "specifically addressed the plaintiff-employee's burden of proof in disparate treatment cases involving separate incidents of misconduct and [has] explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" Perez v. Texas Dep't of Crim. Justice, 395 F.3d 206, 213 (5th Cir. 2004) (emphasis added) (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991); Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990)); accord Bouie v. Equistar Chems. LP, No. 05-20382, 2006 WL 1736557, at *3 (5th Cir. Jun. 22, 2006).

The witnesses (Shelly Guillory, Michael Tuircuit and Traci Arceneaux) whose testimony Small cites in support of his allegations that several white employees were treated more favorably than him had only their own subjective beliefs and hearsay information, unsupported by personal knowledge, about the incidents and disciplinary actions in which the white employees were involved.  "In a case such as this, in which the employer has provided a legitimate [nondiscriminatory] reason for the employment action based on essentially uncontested facts, such generalized evidence is of negligible probative value to prove intentional discrimination."  Chaney v. New Orleans Pub. Facility Mgmt., 179 F.3d 164, 168-69 (5th Cir. 1999) (citation omitted).

Irwin and Ordineaux are the only witnesses in the summary judgment record who had personal knowledge about Chris Becnel, a white employee cited by Small.  Irwin

explained that Becnel's situation was different from Small's.  Plaintiff's Exh. 2, Irwin deposition at pp. 27-30.  Irwin testified that Becnel was unknowingly exposed to a chemical and was hospitalized as a result.  DuPont investigated and found that Becnel had not followed proper safety procedures after the contact, but it did not terminate his employment.  "One of the key differences was that there was no – you know, there were no inconsistencies, Mr. Becnel was very forthright with the information that he provided in that investigation."  Id. at p.29.  No DLT was convened following Becnel's exposure "[b]ecause in that case, the investigation wasn't hampered by Mr. Becnel's being deceptive."  Id. at p.30.  Small's deceitfulness was the "primary difference" between the two incidents and explains why Small was discharged and Becnel was not.  Id.; see also id. at pp. 58-59 (The consensus among the investigators was that Becnel was being truthful, while the consensus in Small's case was that Small was not being truthful).

Ordineaux testified that Becnel had reported his process contact to his supervisor, became cyanotic[3] while with the supervisor and was rushed to the hospital.  Becnel was disciplined with a special written review, which is one step below probation and one step above formal corrective action, for his failure to follow safety procedures after a process

---

[3]Cyanosis is a "a bluish or purplish discoloration (as of skin) due to deficient oxygenation of the blood."  Merriam Webster Medline Plus at
http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=cyanosis.

contact.  Plaintiff's Exh. 4, Ordineaux deposition at pp. 44-45.  Neither Ordineaux nor Hill recalled any other disciplinary incidents involving Becnel.

As to white employee Bridget Jackson, Hill is the only person with personal knowledge whose testimony is in the record.  He testified that she had had a positive urine test with no prior visible indications that she had been exposed.  DuPont's investigation revealed that a contaminated valve in the area where she had been working was the probable source of her process contact.  Jackson was not disciplined for failing to report the exposure because, according to Hill, she had "no signs, no nothing on the coveralls.  There was nothing nowhere that she could actually see that this happened." Plaintiff's Exh. 3, Hill deposition at pp. 59-60.

In contrast, Small admitted that he had been splashed with what he claimed was water and his coveralls were wet.  His coveralls were stained purple from the contact. Water is not purple.  Thus, unlike Jackson's case, the investigators in Small's case concluded that he knew he had been exposed, failed to follow safety procedures and lied about it.

Small also points to white employees Patrick Wright, Dee Badeaux and John Wiggins as similarly situated but more favorably treated than he was.  Hill testified that Wright had made a "misvalving" error that allowed some 4-ADP to enter an area that does not normally contain it.  Plaintiff's Exh. 3, Hill deposition at p.19.  Ordineaux

testified that Wright had told him that he (Wright) had received a verbal, first level corrective action.  Plaintiff's Exh. 4, Ordineaux deposition at pp. 42-43.  Nothing in the record indicates that Wright denied his error, tried to cover it up or otherwise violated DuPont's safety procedures, as the investigators concluded that Small had done.

In 2006, two years after plaintiff was fired, John Wiggins was exposed to 4-ADP and did not follow proper procedures.  Ordineaux testified that Wiggins was given a formal corrective action.  Plaintiff's Exh. 4, Ordineaux deposition at p.59.  Aside from the long time lapse between the incidents, which renders the Wiggins incident irrelevant in the instant case, Wiggins was not similarly situated to Small because nothing in the record indicates that Wiggins denied the error, was dishonest about it or tried to cover it up.

As to Dee Badeaux, no testimony in the record is based on any personal knowledge of her situation.

Thus, Small has failed to establish that any of these white employees were similarly situated and treated more favorably than he in nearly identical circumstances.  See Bouie, 2006 WL 1736557, at *3 (when plaintiff was "discharged for failure to comply with two safety protocols, his situation is not nearly identical to that of the white employees who were not fired for failure to comply with only one safety protocol.").

Small has failed to come forward with competent evidence sufficient to rebut defendant's legitimate, nondiscriminatory reasons for firing him or to indicate that those reasons were false or unworthy of credence. Because no genuine issues of material fact are in dispute, defendant is entitled to summary judgment in its favor as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding. Judgment will be entered accordingly.

New Orleans, Louisiana, this   19th   day of September, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE